J-S58017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| EMMALINE GRESH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSHOEA GRESH | |
| Appellant | No. 1980 MDA 2016 |

Appeal from the Order Entered December 2, 2016
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 201611377

BEFORE:  GANTMAN, P.J., SHOGAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 22, 2017**

Joshoea Gresh ("Appellant")[1] appeals from the issuance of a final order pursuant to the Protection From Abuse ("PFA") Act, 23 Pa.C.S. §§ 6101–6122, in favor of Emmaline Gresh ("Ms. Gresh") for a period of three years. We affirm.

The trial court summarized the history of this case as follows:

> In her Petition, [Ms. Gresh] alleges that a PFA is necessary because [Appellant] broke into her home after he was told not to enter the residence and was trying to take personal property from the home where [Ms. Gresh] and her mother live and throw it away.  [Ms. Gresh] also noted in her Petition that [Appellant] threatened her mother that she will be left with nothing after the divorce.

---

[1]  Appellant's name appears as "Joshoea" and "Joshua" in the record.

A Hearing was held on November 10, 2016, wherein [Ms. Gresh] and [Appellant] proceeded *pro se*. The record revealed that the parties are siblings. The record further revealed that the parents of the parties are in the process of a divorce. [Ms. Gresh], her mother and sisters live in the home on the marital property. [Appellant] and his father live in the garage near the residence where [Ms. Gresh] and her family reside. [Ms. Gresh] testified that [Appellant] recently left the Navy and came to reside with her father. [Appellant] tried to gain entry into her home and was told to stay away. She recollected that about two to three weeks before the court date he came to the home intoxicated at approximately 1:30 a.m. He climbed onto the roof of the house and tried to get in through a window. (N.T. pp. 2-3). She stated that she asked [Appellant] to stay away from her mother's residence and the state police told him to stay away. She further testified that the [s]tate [p]olice were called to the house three (3) times because [Appellant] came to the house drunk one night and tried breaking in in [sic] by coming through the windows. She indicated that he told her that if she did not open the windows or unlock the door he knew that he could get in through her mother's window. (N.T. p. 3).

During the course of the Hearing, [Ms. Gresh] testified that [Appellant] had broken into the home two (2) or three (3) weeks prior after coming home drunk from a bar. [Ms. Gresh] testified that she sees him as a threat. [Ms. Gresh] testified that the police had to come back two (2) times even after they told [Appellant] to stay on the residence where he lives, he refused to do so and the police told her the only way to keep him out of the residence was to get a PFA. [Ms. Gresh] called a witness (Full name unidentified in the record — referred to as Elise)[2] who testified that she was at the home of [Ms. Gresh] when [Appellant] came to the house between 12:00-1:00 a.m. She was upstairs and her brother was also at the house. They were getting ready to leave when [Appellant] attempted to and did gain entry into the house by coming through [Ms. Gresh's] sister's window. He did not enter the residence by using the door. [Ms. Gresh] went downstairs to try to get [Appellant] to leave and he went outside. [Appellant] then started to get on the porch roof which is outside of [Ms. Gresh's] bedroom. The

_____

2 The witness' name is Elise Urban. N.T., 11/10/16, at 4.

witness, [Ms. Gresh] and [Ms. Gresh's] sister were sitting in her room when they heard [Appellant] on the roof. They looked to the window and saw [Appellant] on the porch roof trying to gain entry through [Ms. Gresh's] bedroom window. [Appellant] was pleading with them to let him in and told them he knew the downstairs door was locked. He also stated that he knew he could get in through the Mother's window because that window did not lock. (N.T. pp. 6-7).

[Appellant] testified that he just returned from the Navy and wanted to see his family. He noted the divorce and that he and his mother do not have a good relationship. He testified that he went to the residence to try and see his sisters and knew if he rang the doorbell the dog would bark. He said he was discretely trying to get in touch with his sisters without waking his mother. (N.T. p. 10). He testified that he entered through a window[,] left the residence upon request of his sisters and despite this again climbed onto the roof and attempted to gain entry to the residence. He noted that the police were called.

Trial Court Opinion, 5/10/17, at 3–5 (footnote omitted). "After taking testimony and making a specific finding of abuse," the trial court filed a PFA order on December 2, 2016. *Id.* at 2–3. This appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant states the following questions for our review:

I.   DID THE EVIDENCE OF RECORD SUPPORT THE TRIAL COURT'S CONCLUSION OF A FINDING OF ABUSE AGAINST THE APPELLANT?

II.  DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN GRANTING [MS. GRESH] THE FINAL PROTECTION FROM ABUSE ORDER?

Appellant's Brief at v.[3]   Because Appellant's issues are related, we address them in tandem.

"In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." ***Boykai v. Young***, 83 A.3d 1043, 1045 (Pa. Super. 2014) (citations omitted).   Appellant first challenges the sufficiency of the evidence supporting the trial court's finding of abuse.   According to Appellant, Ms. Gresh's allegations of abuse involve third parties, not herself, and "[t]here is nothing within the Petition for Protection From Abuse that alleges that [Ms. Gresh] is in reasonable fear of bodily injury."   Appellant's Brief at 3.   Moreover, Appellant argues that the trial court abused its discretion by ignoring inconsistencies in Ms. Gresh's petition and her testimony, which indicate that Appellant leveled his statements against their mother, not Ms. Gresh.   ***Id.*** at 4.

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it. Furthermore, the preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence.

---

[3]  Ms. Gresh did not file a responsive brief.

***Thompson v. Thompson***, 963 A.2d 474, 477 (Pa. Super. 2008) (internal citations and quotation marks omitted).

Section 6102 of the PFA Act defines "abuse" as follows:

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).[4]

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a).

We have reviewed the briefs of the parties, the relevant law, the certified record before us, and the thorough opinion of the trial court dated May 10, 2017. After review, we discern no merit to the issues Appellant raises on appeal. It is our conclusion that the trial court correctly stated the

applicable standards of review, assessed the credibility of the witnesses, thoroughly addressed the issues presented, and aptly disposed of Appellant's claims of error.

Accordingly, we affirm the PFA order based on the trial court's opinion, and we adopt its analysis and reasoning as our own. The parties are directed to attach a copy of the trial court's May 10, 2017 opinion in the event of further proceedings in this matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/20017

## IN THE COURT OF COMMON PLEAS
## OF LUZERNE COUNTY

| | | |
|---|---|---|
| EMMALINE GRESH | : | IN THE COURT OF COMMON PLEAS |
| | : | OF LUZERNE COUNTY |
| Plaintiff | : | |
| v. | : | CIVIL DIVISION |
| | : | |
| | : | |
| | : | PROTECTION FROM ABUSE |
| JOSHOEA GRESH | : | |
| | : | |
| Defendant | : | NO. ~~113377~~ OF 2016 |

### OPINION

On November 4, 2016, Emmaline Gresh ("Plaintiff"), filed a Petition for Protection from Abuse Order, which was issued after hearing on November 10, 2016 against Defendant, Joshoea Gresh ("Defendant"), effective for a period of three (3) years. On December 6, 2016, Defendant filed a Notice of Appeal.

This Court entered an Order on December 19, 2016 directing Defendant to file of record a Concise Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b) and serve a copy of same upon the District Attorney and this Court pursuant to Pa. R.A.P. 1925(b)(1). The Order required the Statement to concisely identify each ruling or error Appellant intends to challenge with sufficient detail to identify all pertinent issues for the Judge to consider. Further, the Order provided that any issue not properly included in the Concise Statement and timely filed and served within twenty-one (21) days of the date of the Order shall be deemed waived pursuant to Rule 1925(b).

On January 9, 2017, Defendant filed a Statement of Matters Complained of on Appeal Pursuant to Rule 1925(b).

Defendant's appeal issues are as follows:

The Court erred in failing to recognize the inconsistencies in Appellee's Petition for Protection from Abuse compared to what was stated at the Hearing on November 10, 2016. (Defendant's Concise Statement, ¶ 2).

The Court further erred in failing to recognize the inconsistencies in Appellee's Petition for Protection from Abuse as the Appellee indicated in number thirteen that Appellant used or threatened to use a firearm or other weapon against the Appellee, but when prompted to describe the use or threatened use, Appellee stated "[t]old my mom she will be left with nothing." (*Id.*, ¶ 3).

The Court erred in failing to recognize that the Appellee requested that the Appellant only be evicted and excluded from the main house and not the garage, as is stated in the Temporary Protection from Abuse Order. (*Id.*, ¶ 5).

The Court erred in determining that the Appellee is in reasonable fear of imminent serious bodily injury as required by section 6102. (*Id.*, ¶ 6).

The Court erred in determining that the Appellant [k]knowingly engaging in a course of conduct or repeatedly committing acts toward another person including following the person, without proper authority, under circumstance which place the person in reasonable fear of bodily injury. (*Id.*, ¶ 7).

The November 2016 PFA was entered after a Hearing conducted by this Court.

After taking testimony and making a specific finding of abuse, this Court Ordered:

- Defendant shall not abuse, stalk, harass, threaten or attempt to use physical force that would reasonably be expected to cause bodily injury to Plaintiff or any other protected person in any place where they might be found.

- Defendant is completely evicted and excluded from the residence at 296 East County Road, Drums, PA.

- Except as provided in paragraph 5 of this order, Defendant is prohibited from having **ANY CONTACT** with Plaintiff, either directly or indirectly, or any other person protected under this order, at any location, including but not limited to any contact at Plaintiff's school, business, or place of employment. Defendant is specifically ordered to stay away from the following locations for the

2

duration of this order. Includes intent, social media, texting, emails. (Emphasis in original).

- Except as provided in paragraph 5 of this order, Defendant shall not contact Plaintiff, or any other person protected under this Order, by telephone contact or any other means, including through third persons.

- Defendant is prohibited from possessing, transferring or acquiring any firearms for the duration of this Order.

- Defendant shall relinquish to the Sheriff the following firearm licenses owned or possessed by Defendant: any and all.

- Defendant is directed to relinquish to the Sheriff any firearm, other weapon or ammunition listed in Attachment A to Final Order, which is incorporated herein by reference.

- The costs of this action are imposed on Defendant, as follows: costs on Defendant.

- Because this order followed a contested proceeding, or a hearing at which Defendant was not present, despite being served with a copy of the petition, temporary order and notice of the date, time and place of the hearing, Defendant is ordered to pay an additional $100 surcharge to the court, which shall be distributed in the manner set forth in 23 Pa C.S.A. §6106(d).

- All provisions of this order shall expire in three years, on 11/10/2019.

In her Petition, Plaintiff alleges that a PFA is necessary because Defendant broke into her home after he was told not to enter the residence and was trying to take personal property from the home where she and her mother live and throw it away. She also noted in her Petition that Defendant threatened her mother that she will be left with nothing after the divorce.

A Hearing was held on November 10, 2016, wherein Plaintiff and Defendant proceeded *pro se*. The record revealed that the parties are siblings. The record further revealed that the parents of the parties are in the process of a divorce. Plaintiff, her mother and sisters live in the home on the marital property. Defendant and his father

3

live in the garage near the residence where Plaintiff and her family reside. Plaintiff testified that Defendant recently left the Navy and came to reside with her father. The Defendant tried to gain entry into her home and was told to stay away. She recollected that about two to three weeks before the court date he came to the home intoxicated at approximately 1:30 a.m. He climbed onto the roof of the house and tried to get in through a window. (N. T. pp. 2-3).[1] She stated that she asked Defendant to stay away from her mother's residence and the state police told him to stay away. She further testified that the State Police were called to the house three (3) times because Defendant came to the house drunk one night and tried breaking in in by coming through the windows. She indicated that he told her that if she did not open the windows or unlock the door he knew that he could get in through her mother's window.(N.T. p. 3).

During the course of the Hearing, Plaintiff testified that Defendant had broken into the home two (2) or three (3) weeks prior after coming home drunk from a bar. Plaintiff testified that she sees him as threat. Plaintiff testified that the police had to come back two (2) times even after they told Defendant to stay on the residence where he lives, he refused to do so and the police told her the only way to keep him out of the residence was to get a PFA. Plaintiff called a witness (Full name unidentified in the record – referred to as Elise) who testified that she was at the home of the Plaintiff when the Defendant came to the house between 12:00-1:00 a.m. She was upstairs and her brother was also at the house. They were getting ready to leave when the Defendant attempted to and did gain entry into the house by coming through Plaintiff's sister's window. He did not enter the residence by using the door. The Plaintiff went downstairs to try and get the Defendant to leave and he went outside. The Defendant then started

---

[1] All references to N.T. are to the Notes of Testimony from the November 10, 2016 PFA Hearing.

4

to get on the porch roof which is outside of the Plaintiff's bedroom. The witness, Plaintiff and Plaintiff's sister were sitting in her room when they heard the Defendant on the roof. They looked to the window and saw the Defendant on the porch roof trying to gain entry through the Plaintiff's bedroom window. The Defendant was pleading with them to let him in and told them he knew the downstairs door was locked. He also stated that he knew he could get in through the Mother's window because that window did not lock. (N.T. pp. 6-7).

The Defendant testified that he just returned from the Navy and wanted to see his family. He noted the divorce and that he and his mother do not have a good relationship. He testified that he went to the residence to try and see his sisters and knew if he rang the doorbell the dog would bark. He said he was discretely trying to get in touch with his sisters without waking his mother. (N.T. p. 10). He testified that he entered through a window left the residence upon request of his sisters and despite this again climbed onto the roof and attempted to gain entry to the residence. He noted that the police were called.

The Superior Court's standard of review for PFA orders is well settled:

> "In the context of a PFA order, the Court reviews the trial court's legal conclusions for an error of law or abuse of discretion." *Drew v. Drew*, 870 A.2d 377, 378 (Pa.Super.2005) (quoting *Ferri v. Ferri*, 854 A.2d 600, 602 (Pa.Super.2004)). When interpreting statutes, "we exercise plenary review." *Commonwealth v. Fedorek*, 913 A.2d 893, 896 (Pa.Super.2006) (citing *Commonwealth v. Magliocco*, 584 Pa. 244, 883 A.2d 479, 481 (2005)).

The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advanced prevention of physical and sexual abuse. *See Mescanti v. Mescanti*, 956 A.2d 1017 (Pa.Super.2008).

5

The credible testimony at the Hearing before this Court evidences that the contact was more than "incidental" contact. As noted above, Plaintiff testified that she asked Defendant to stay away from her mother's residence and that the State Police were called and came to the residence on at least three separate occasions. Furthermore, Defendant came to the house drunk one night, tried breaking in through the windows, told her that if she did not open the windows or unlock the door, he knew that he could get in through her mother's window. Most importantly, Plaintiff testified that she sees Defendant as a threat to her safety.

Plaintiff further testified that the police were called back two (2) times after they told Defendant to stay away from her residence. The testimony which the Court found most credible was that of a witness who testified that she witnessed Defendant try to break into Plaintiff's mother's house and that he climbed on the roof and threatened that if he was not let in, he would break in.

For a finding of "abuse" for a protection order, the Court need only find under 23 Pa.C.S.A. § 6102(a)(2), that Defendant placed "another in reasonable fear of imminent fear of bodily injury." *Id.* Moreover, "[t]he victim of abuse need not suffer actual injury, but rather be in reasonable fear of imminent serious bodily injury." *Burke ex rel. Burke v. Bauman,* 814 A.2d 206, 208–209 (Pa.Super.2002). The objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury.... [The] intent [of the alleged abuser] is of no moment." *Raker v. Raker,* 847 A.2d 720, 725 (Pa.Super.2004).

The Court notes that throughout Defendant's Concise Statement of Matters Complained of on Appeal, Defendant fails to recognize the seriousness of his actions. Defendant further fails to recognize that Plaintiff's testimony regarding her fear of

6

Defendant, that was believed by this Court, in conjunction with her testimony regarding Defendant's actions previously and on the night of the precipitating event wherein a witness was present is sufficient to support the court's determination that she was in fear of imminent serious bodily injury. *See Williamson v. Williamson,* 402 Pa.Super. 276, 586 A.2d 967, 972 (1991) ("finder of fact is entitled to weigh evidence and assess credibility" and "believe all, part or none of the evidence presented").

Therefore, the Court's issuance of PFA Order in this matter was warranted and the Appeal of Defendant must be DENIED and DISMISSED.

END OF OPINION