**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| HEATHER JENKINS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON A. JENKINS | : | |
| | : | No. 2977 EDA 2024 |
| Appellant | | |

Appeal from the Order Entered October 8, 2024
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2024-PF-1264

BEFORE:   PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:                **FILED JULY 28, 2025**

Jason A. Jenkins ("Appellant") appeals pro se from the Final Protection from Abuse ("PFA") Order entered on October 8, 2024, in the Court of Common Pleas of Lehigh County. Appellant asserts the trial court erred in finding he had committed abuse under the Pennsylvania PFA Act[1] and that it deprived him of his due process rights at the PFA Hearing. After careful review, we affirm on the basis of the well-reasoned opinion of Judge Michele A. Varricchio.

Appellant and Plaintiff/Appellee, Heather Jenkins, are former spouses who share a minor child (d.o.b. 3/2007). **See** Petition for Protection from

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 23 Pa.C.S.A. §§ 6101-6122.

1

Abuse, 9/30/24, at ¶¶ 5-8. Appellee claimed that there exists a history of abuse with Appellant: "The last 10 years have been filled with violent outbursts. He's threatened and hit [Child] and threatened me in every way possible. During [our] marriage, [he] broke my foot and cheekbone." *Id.* at ¶ 12. Appellee further recounted the latest incident that led to her filing for the PFA in her Petition:

> This weekend, my ex-husband, [Appellant], knowing that [] 17 ½ year old [Child] was at a friend's house for a sleepover, showed up [at] my front door and began pounding on it. I was doing bills on the living room floor and was frozen at first. The pounding escalated so I crawled to the window to see who it was and I saw that it was him. He started pounding harder so I crawled over to the front door and tried to barricade it with my back against it and my feet against the banister while he continue[d] to pummel and yell. He's broken down doors while we were married so I was terrified the door was going to burst open. I said[,] "I will call the police!" and he said, "I hope you do!" and continued to bang, then he started ranting about our daughter and said I will "face consequence." He finally left after a few minutes and revved his car, peeled out, and screeched his tires for my neighbors to hear. Then he went to the parents of [our daughter's] ex-boyfriend (for 6 months) and told them [their] son has a sex tape, which was untrue and humiliating. This has been escalating since March, when the three of us were in family counseling that my daughter requested. I [paid] for the 3 of us to have several sessions, but at the last one, the therapist (Shelly Steiner) called the police on him because he tried to grab our daughter who was refusing to go, ran downstairs, and stared up menacingly at the three of us through the window and kept pointing. She called the police to escort us to my car, [which] they did. Some of the policemen stayed with him. A couple of weeks ago, he threatened our daughter with having me thrown in jail for not forcing her to go. She towers over me and she's afraid of him. No matter how much I try to make her go, she refuses, so he is bringing me to court on Oct. 8, which is why I am not including our daughter in this petition. I do intend to be there on Oct. 8. There is a history of violence with him and once [he] even went through court-ordered anger management for fracturing my cheekbone. He has also been abusive to her and once came to court for hitting her in the face as hard as he could. This situation is escalating as she approaches her 18th birthday. We are terrified.

*Id.* at ¶ 11.

That same day, September 30, 2024, the trial court granted Appellee a Temporary PFA Order set to expire ten days later. The Order stated that Appellant "shall not abuse, harass, stalk, threaten, or attempt or threaten to use physical force against [Appellee] in any place where he/she/they might be found." Temporary [PFA] Order, 9/30/24, at 1. Additionally, Appellant was prohibited from having any contact with Appellee, either directly or indirectly. *See id.* Temporary physical custody of their daughter was further awarded to Appellee pending the outcome of the final hearing. *See id.* at ¶ 5.

The final hearing was held on October 8, 2024, where both parties appeared pro se and testified. The court granted Appellee a Final PFA Order that was effective immediately and until April 8, 2025. *See* Final [PFA] Order, 10/8/24, at 1. This Order did not supersede their previous custody order filed in Lehigh County, Docket No. 2015-FC-0086. *See id.* at ¶ 5.

On October 18, 2024, Appellant filed a Motion for Reconsideration of Final [PFA] Order. This Motion was rejected by the trial court on October 22, 2024.

On November 7, 2024, Appellant filed his Notice of Appeal. He then filed a timely court-ordered Rule 1925(b) Statement of Errors Complained of on Appeal, and the court filed a Rule 1925(a) opinion. *See* Pa.R.A.P. 1925.

Although Appellant raises ten issues in his 1925(b) Statement, he abandons them in his brief, only raising four questions for our review:

1. Did the trial court err as a matter of law and abuse its discretion when it found the Appellant had committed abuse under the Pennsylvania PFA Act (23 Pa. C.S. § 6101 [et seq.]), subparagraph 6102(2), where the record shows the appellant never engaged in physical abuse nor threats of physical abuse, and there was no testimony that the appellee was afraid that the appellant would harm her in any way, much less that he would inflict imminent serious bodily injury?

2. Did the trial court err as a matter of law and abuse its discretion when it found that the Appellant had committed abuse under the Pennsylvania PFA Act (23 Pa. C.S. § 6101 [et seq.]), subparagraph 6102(5), pertaining to knowingly engaging in a course of conduct or repeating acts, where the record shows that the parties had not seen each other for months, had not spoken to each other in months, had barely communicated via online messaging applications, and had no other interactions over the eight months that preceded the incident and the Appellee never testified to a course of conduct[,] instances of escalation[, or] that she was in fear of bodily injury?

3. Did the trial court err as a matter of law and abuse its discretion by depriving the Appellant of his due process rights, first, by cutting off the Appellant during the hearing such that it failed to permit him to provide complete and meaningful testimony, submit his exhibits, and to present his defense in its entirety; and, second[], by relying on the hearsay, allegations and content of the PFA Petition even though said allegations were never testified to nor presented on the record?

4. Does this matter fall under the exceptions to the mootness doctrine, first, because it involves a question of public importance and second[], because this order will result in severe detriment to the appellant? [2]

---

[2] Even though the Final PFA Order expired in April 2025, before this appeal's resolution, we agree this appeal is not moot because it falls under the third exception to the mootness doctrine, since Appellant "may suffer some detriment" from the trial court's Final PFA Order. ***Warmkessel v. Heffner***, 17 A.3d 408, 413 (Pa. Super. 2011) (citation omitted); *see **Vardzel v. Vardzel***, 329 A.3d 598, 2024 WL 4371038, at *6 (Pa. Super. filed Oct. 2, 2024) (declining to find appeal from expired final PFA order moot because appellant "may suffer some detriment.") (citation omitted); ***see also*** Pa.R.A.P. 126(b)

Appellant's Brief, 2/11/25, at 11-12 (suggested answers omitted).

"In general, we review the propriety of a PFA order for an abuse of discretion or an error of law." **Trout v. Strube**, 97 A.3d 387, 389 (Pa. Super. 2014) (citation omitted).

When an appellant's claim specifically alleges the evidence was insufficient to support the PFA order, "we review the evidence in the light most favorable to the petitioner…[to] determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence." **Karch v. Karch**, 885 A.2d 535, 536-37 (Pa. Super. 2005) (citation omitted). We defer to the credibility determinations of the trial court. **See id.**

After a thorough review of the record, Appellant's brief, and the Honorable Michele A. Varricchio's Pa.R.A.P. 1925(a) opinion dated December 30, 2024, we conclude that the trial court opinion comprehensively discusses and properly disposes of the questions presented. In addressing Appellant's issues, the trial court explains how the record fully supports its conclusion that Appellee reasonably feared bodily injury under 23 Pa.C.S.A. § 6102(a)(2) and (5), citing Appellee's Petition and testimony of current and past abuse. **See** Trial Court Opinion, 12/30/24, at 5-8. Additionally, the trial court refutes Appellant's due process claims by citing the transcripts of proceedings on October 8, 2024: "[Appellant] extensively cross-examined [Appellee] and testified to his version of events, which this [c]ourt did not find

(unpublished non-precedential memoranda filed in the Superior Court after May 1, 2019 may be cited for their precedential value).

credible…[Appellant] did not present any exhibits, and he mistakenly believed that this [c]ourt had the ability to view the parties' communication through the TalkingParents application." ***Id.*** at 8.

Accordingly, we affirm on the basis of the trial court's comprehensive opinion dated December 30, 2024, which is attached hereto.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/28/2025